**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DANA G. CALHOUN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 13 C 8042 |
| | ) | |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| CITIMORTGAGE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant CitiMortgage, Inc.'s motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (dkt. 8) plaintiff Dana G. Calhoun's complaint (dkt. 1) is granted. The complaint is dismissed with prejudice and this case is terminated. See statement.

**STATEMENT**

Plaintiff Dana G. Calhoun brought a five-count *pro se* complaint (dkt. 1) against CitiMortgage, Inc. ("CitiMortgage") essentially alleging that CitiMortgage's judicial sale of Calhoun's property did not comply with the parties' alleged mortgage modification agreement. Calhoun alleges that he contracted with CitiMortgage to purchase two properties, at 1633 E. 91st St., Chicago, Illinois ("1633 E. 91st") and 7843 S. Eberhart Ave., Chicago, Illinois ("7843 S. Eberhart") in February 2008. (Compl. ¶ 10.) After experiencing difficulties making his mortgage payments, Calhoun entered into a trial payment loan modification agreement for 7843 S. Eberhart in January 2013. (*Id.* ¶ 14.) He negotiated a loan modification agreement with CitiMortgage for 1633 E. 91st from May 1, 2013 until September 6, 2013. (*Id.* ¶ 16.) Judicial sale of 1633 E.91st occurred on September 9, 2013 (*id.* ¶ 18) and the Honorable Allen Price Walker, Associate Judge of Cook County Chancery Court, entered an order approving the sale of the property and confirming the sale and order of possession on October 8, 2013. (Dkt. 9, Ex. D.)[1] After September 9, however, CitiMortgage contacted Calhoun for further documentation to finalize the loan modification for 1633 E.91st. (Compl. ¶¶ 19-20.)

Count I of Calhoun's complaint, "Breach of Contract/Breach of Duty of Good Faith [or] Fair Dealing," alleges that he had entered into trial payment plans, valid forbearance agreements, and loan modification agreement with CitiMortgage and that CitiMortgage "breached those

---

[1] The court may take judicial notice of "facts readily ascertainable from the public court record and not subject to reasonable dispute" from state court proceedings in ruling on a motion to dismiss without converting the motion to one for summary judgment. *Ennega* v. *Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012).

contracts" "[b]y failing to grant Plaintiff permanent modifications by the close of the trial period defined in the written and verbal contracts[.]" (*Id.* ¶¶ 23-47.) He also states that CitiMortgage "routinely and regularly breaches" the covenant of good faith and fair dealing through various actions such as failing to perform loan servicing functions and failing to follow through on contractual obligations. (*Id.* ¶¶ 41-44.) Counts II and IV both assert claims for promissory estoppel. Calhoun's basis for these counts is his reliance on CitiMortgage's representation by way of the forbearance and loan modification agreements CitiMortgage sent him. (*Id.* ¶¶ 48-52, 87-99.) In reliance on these representations, Calhoun chose to forego "other remedies that might be pursued to save his home." (*Id.* ¶ 54.) Count III alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL. COMP. STAT. 505/1 *et seq.* ("the ICFA"). Calhoun also states that CitiMortgage violated the ICFA through a variety of acts such as inducing him to rely on CitiMortgage to modify mortgage loans, and through some general practices such as employing policies to "incentivize employees to rush customers off the telephone as quickly as possible as to frustrate customers" and routinely losing customers' loan documents. (Compl. ¶¶ 60-86.) Calhoun states that CitiMortgage accepted his mortgage payments while simultaneously requesting documentation necessary to determine his eligibility for modification and then losing or destroying his documents and loan files. (*Id.* ¶ 72.) Finally, Count V alleges that CitiMortgage violated the Fair Debt Collection Practices Act ("the FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, by "threaten[ing] and harass[ing]" Calhoun and threatening to sell his property while he was "in an active repayment plan and making monthly payments to CitiMortgage." (Compl. ¶¶ 101-105.) CitiMortgage has moved to dismiss the entire complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. 8.) Calhoun was given the opportunity to respond in writing, which he did (dkts. 13, 14), and CitiMortgage replied (dkt. 15).

Rule 12(b)(1) provides that a case will be dismissed if the court lacks the authority to hear and decide the dispute. Fed. R. Civ. P. 12(b)(1). In ruling on a 12(b)(1) motion the court "must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Capitol Leasing Co.* v. *Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993). In evaluating whether subject matter jurisdiction exists, the court may look past the complaint to "whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Grafon Corp.* v. *Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979). The burden of demonstrating jurisdiction is on the non-moving party. *See Minn-Chem, Inc.* v. *Agrium, Inc.*, 683 F.3d 845, 852-53 (7th Cir. 2012).

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a Rule 12(b)(6) motion, the court takes as true all facts in the complaint and draws all reasonable inferences in favor of the non-moving party. *Dixon v. Page,* 291 F.3d 485, 486-87 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis but must also establish that the requested relief is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v.*

2

*Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories. *Hatmaker v. Mem'l Med. Ctr.,* 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

CitiMortgage argues that this court lacks subject matter jurisdiction over Calhoun's claims under the *Rooker-Feldman* doctrine. The doctrine is derived from *Rooker* v. *Fidelity Trust Co.,* 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and *District of Columbia Court of Appeals* v. *Feldman,* 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). The doctrine stands for the principle that only the Supreme Court has appellate jurisdiction to reverse or modify a state court judgment; lower federal courts lack subject matter jurisdiction to review state court decisions. *See Holt* v. *Lake Cnty. Bd. of Comm'rs,* 408 F.3d 335, 336 (7th Cir. 2005) (citing *Rooker,* 263 U.S. at 416; *Feldman,* 460 U.S. at 482). The *Rooker–Feldman* doctrine therefore bars both direct and indirect review of a state court judgment.

The fundamental issue in a *Rooker-Feldman* analysis is whether the injury alleged is distinct from the state court judgment. In general, if the plaintiff's alleged injury resulted from the state court judgment itself, the doctrine bars such a claim. *See Beth–El All Nations Church* v. *City of Chicago,* 486 F.3d 286, 292 (7th Cir. 2007). The doctrine also bars "an action in federal court that alleges an injury 'inextricably intertwined' with a state court decision, such that success in the federal court would require overturning the state court decision." *Epps* v. *Creditnet, Inc.,* 320 F.3d 756, 759 (7th Cir. 2003). In determining whether a claim is "inextricably intertwined," the "crucial point is whether 'the district court is in essence being called upon to review the state-court decision.'" *Ritter* v. *Ross,* 992 F.2d 750, 754 (7th Cir. 1993) (quoting *Feldman,* 460 U.S. at 483-84 n.16). If a claim is "inextricably intertwined" with a state court decision, the court must then determine whether the plaintiff had a "reasonable opportunity to raise the issue in the state court proceedings." *Taylor* v. *Fed. Nat'l Mortg. Ass'n,* 374 F.3d 529, 533 (7th Cir. 2004). To establish that there was no reasonable opportunity to raise an issue in state court, a plaintiff must point to "some factor independent of the actions of the opposing party that precluded the litigants from raising their federal claims during the state court proceedings." *Long* v. *Shorebank Dev. Corp.,* 182 F.3d 548, 558 (7th Cir. 1999). A plaintiff may then proceed in federal court if she can make this showing. *Taylor,* 374 F.3d at 533.

If, on the other hand, the claimed injury is independent of the state-court judgment, or if the federal claim is based on "a prior injury that a state court failed to remedy," *Rooker-Feldman* does not bar the claim. *See Centres, Inc.* v. *Town of Brookfield, Wis.,* 148 F.3d 699, 702 (7th Cir. 1998). Courts must construe the doctrine narrowly, confining its application to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.* v. *Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005).

## A. Count I: Breach of Contract; Breach of Duty of Good Faith and Fair Dealing

Calhoun's breach of contract claim is "inextricably intertwined" with the state court decision to enter the order confirming the judicial sale. As in *Mumma* v. *Wells Fargo Home Mortgage*, CIV. 12-1073-GPM, 2013 WL 4761118, at *3 (S.D. Ill. Sept. 4, 2013), "The basis of all these claims is Plaintiff's contention that the foreclosure was improper because Defendant had promised to restructure his mortgage. Because Defendant broke its promise, Plaintiff's home was foreclosed—but the foreclosure has been adjudicated. The Court cannot rule on Plaintiff's claims without going behind that judgment." Calhoun is essentially asking the court to find that the judicial sale itself was wrongful by alleging that CitiMortgage "improperly and without justification, ultimately decided to treat the Trial Payment Plan agreements as if they were null and void and threaten the Sale of Plaintiff's property." (Compl. ¶ 46.) The injury complained of in the breach of contract count is that CitiMortgage caused Calhoun to lose 1633 E. 91st—the decision that the state court made when it entered its order confirming judicial sale. This claim is dismissed pursuant to Rule 12(b)(1).

Even if the court had jurisdiction over the breach of contract claim, it would still dismiss Count I under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. "Under Illinois law, a plaintiff asserting a breach of contract claim 'must plead and prove: (1) the existence of a contract, (2) the performance of its conditions by the plaintiff, (3) a breach by the defendant, and (4) damages as a result of the breach.'" *DeliverMed Holdings, LLC* v. *Schaltenbrand*, 734 F.3d 616, 626 (7th Cir. 2013) (quoting *Law Offices of Colleen M. McLaughlin* v. *First Star Fin. Corp.,* 2011 IL App (1st) 101849, 963 N.E. 2d 968, 981, 357 Ill. Dec. 570 (2011)). But Calhoun has not pleaded the existence of a contract that CitiMortgage breached. He continuously refers to his ongoing negotiations with CitiMortgage to enter into the loan modification plan for 1633 E.91st and CitiMortgage's multiple requests for documents. (*See* Compl. ¶¶ 16-20, 46.) While he states that he "successfully entered into a trial payment loan modification for 7843 S. Eberhart," he makes no such allegation for 1633 E.91st. (*Id.* ¶ 14.) He also states at various points that he entered into a trial payment plan, a forbearance agreement, and a loan modification agreement with CitiMortgage. It is unclear to the court what type of agreement, if any, the parties concluded and CitiMortgage breached.

For this reason, Calhoun's reliance on *Wigod* v. *Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012), is unpersuasive. In *Wigod*, the plaintiff alleged that she had, in fact, entered into a trial payment plan with the defendant bank and that the bank had breached that agreement. *Id.* at 558. Here, however, it is unclear to the court whether there was any agreement at all regarding 1633 E.91st based on the documents Calhoun attached to his complaint. For example, he attaches correspondence he or his representative sent to CitiMortgage in June, July, and September 2013 with additional information CitiMortgage requested related to 1633 E.91st.

(Compl., Exs. C1, C8, C13.)[2]

Finally, Illinois law does not recognize an independent tort for breach of the implied duty of good faith and fair dealing arising from a mortgagor-mortgagee relationship. *See Johnstone v. Bank of America, N.A.*, 173 F. Supp. 2d 809, 817 (N.D. Ill.2001) (citing *Voyles* v. *Sandia Mortg. Corp.,* 751 N.E. 2d 1126, 1131-32, 196 Ill.2d 288, 256 Ill. Dec. 289 (2001)). Breach of the duty of good faith and fair dealing is only a basis for a breach of contract action. *La Salle Bank Nat'l Assoc.* v. *Paramont Properties,* 588 F.Supp.2d 840, 853 (N.D. Ill.2008); *see also Seip* v. *Rogers Raw Materials Fund, L.P.,* 948 N.E. 2d 628, 637, 408 Ill. App. 3d 434, 350 Ill. Dec. 348 (2011) ("The duty . . . is not an independent source of duties for the parties to a contract, and is used as a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions.") (internal quotation marks and citation omitted)). To the extent that Count I asserts a claim for breach of good faith and fair dealing, it is dismissed for failure to state a claim. *See Acevedo* v. *CitiMortgage, Inc.*, No. 11 C 4877, 2013 WL 1283807, at *3 (N.D. Ill. Mar. 26, 2013). Count I is dismissed.

### B.    Counts II and VI: Promissory Estoppel

For the same reasons that the *Rooker-Feldman* doctrine bars the court from asserting jurisdiction over Count I, it bars the court from adjudicating Counts II and IV. The essence of Calhoun's claim for promissory estoppel is that CitiMortgage broke a promise to him that led to the judicial sale of 1633 E.91st. "Where Plaintiff seeks money damages for violation of the state . . . promissory estoppel [claim] . . ., the question is whether relief on [that] claim would contradict the state's judgment." *Mumma*, 2013 WL 4761118, at *3. It would. The basis of this claim is that 1633 E.91st was foreclosed on, "but the foreclosure has been adjudicated [by the state court]. The [c]ourt cannot rule on [Calhoun's] claims without going behind that judgment." *Id.* (citing *Sheikhani* v. *Wells Fargo Bank*, 526 F. App'x 705, 706 (7th Cir. 2013)). These claims are thus dismissed under Rule 12(b)(1) pursuant to the *Rooker-Feldman* doctrine.

Even if the court had jurisdiction, it would still dismiss these claims. To establish a claim based on promissory estoppel under Illinois law, a plaintiff must show that: (1) defendant made an unambiguous promise to plaintiff; (2) plaintiff relied on such promise; (3) plaintiff's reliance was expected and foreseeable by defendant; and (4) plaintiff relied on the promise to its detriment. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.,* 906 N.E. 2d 520, 523-24, 233 Ill.2d 46, 329 Ill. Dec. 322 (2009). Reliance must be reasonable and justifiable. *Id.*at 528.

---

[2]    "Where exhibits attached to a complaint negate its allegations, a court is not required to credit the unsupported allegations." *Bell* v. *Lane*, 657 F. Supp. 815, 817 (N.D. Ill. 1987); *see also Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992) ("A plaintiff may plead himself out of court by attaching documents to the complaint that indicate he or she is not entitled to judgment."). The court thus credits the exhibits and not Calhoun's unsupported allegations where the two conflict.

5

As discussed above, it is unclear to the court what promises CitiMortgage ever made to Calhoun because it is unclear whether the parties entered into a contract or whether CitiMortgage made promises to Calhoun to induce him to engage in any behavior. Calhoun himself avows in his complaint that "[f]rom May 1, 2013 to September 6, 2013" he and CitiMortgage "negotiated" the loan modification or forbearance agreement for 1633 E.91st. (Compl. ¶ 16.) He states that CitiMortgage was still requesting documentation to "finalize the loan modification" on September 14, 2013 (*id.* ¶ 20), but the judicial sale occurred on September 9, 2013, and an order confirming it was entered on October 8, 2013. (Dkt. 9, Ex. D.) Calhoun also fails to allege what promises CitiMortgage made and broke by failing to allege any terms of this agreement. Both counts alleging promissory estoppel fail under Rule 12(b)(6).

### C. Count III: Illinois Consumer Fraud and Deceptive Business Practices Act

"The Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson* v. *Toyota Motor Credit Corp.*, 775 N.E. 2d 951, 960, 201 Ill.2d 403, 266 Ill. 879 (2002). "The Illinois Supreme Court has explained that '[t]he elements of a claim under the Act are: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce.'" *Cohen* v. *Am. Sec. Ins. Co.*, 735 F.3d 601, 608 (7th Cir. 2012) (quoting *Robinson,* 775 N.E. 2d at 960). "Where a plaintiff's ICFA claim sounds in fraud, it must be pleaded with particularity pursuant to Rule 9(b)." *Matthews* v. *Homecoming Fin. Network*, No. 03 C 3115, 2005 WL 2387688, at *10 (N.D. Ill. Sept. 26, 2005). In other words, Calhoun must plead the who, what, when, where, and how of CitiMortgage's alleged deception or fraud. *See Ruffino* v. *Bank of America, N.A.*, No. 13 C 50124, 2013 WL 5519456, at *4 (N.D. Ill. Oct. 3, 2013).

"To the extent that [Calhoun] claims [CitiMortgage] violated the [ICFA] by improperly seeking foreclosure, *Rooker-Feldman* steps in." *Cosey* v. *Ameriquest Mortg.*, No. 10 C 5848, 2011 WL 5828191, at *5 (N.D. Ill. Nov. 18, 2011), *appeal dismissed*, 466 F. App'x 552 (7th Cir. 2012). The harm Calhoun alleges as a result of CitiMortgage's violation of the ICFA is the same harm that underlies his breach of contract and promissory estoppel claims. He states that he has suffered "financial harm by paying money to CitiMortgage that he would not have paid but for 'CitiMortgage' Conduct. Plaintiff was further injured by being subject to unnecessary or improper foreclosure processes." (Compl. ¶ 68.) These harms stem from the foreclosure on the home, which Calhoun insists represented a breach of the contract he had with CitiMortgage. The foreclosure was the result of a state court order.

Additionally, each allegation relating to CitiMortgage's general conduct that Calhoun claims violated the ICFA are ones that he could have raised "during the state court foreclosure proceedings." *Byrd* v. *Homecomings Fin. Network*, 407 F. Supp. 2d 937, 945 (N.D. Ill. 2005); *but see Ruffino*, 2013 WL 5519456, at **3-4 (alleged ICFA violations took place before state

court judgment was final so *Rooker-Feldman* doctrine did not apply, but allegations still failed for failure to plead fraud with particularity and due to *res judicata* because plaintiff could have raised these issues in state court actions). Although Calhoun frames his allegations in terms of CitiMortgage's general business practices, each allegation in Count III actually reframes his breach of contract or promissory estoppel allegations. (*See* Compl. ¶ 63(b) ("CitiMortgage induced Plaintiff['s] reasonable reliance on CitiMortgage to modify his mortgage loans upon successful completion of performance pursuant to agreements. . ."); *id.* ¶ 63(i) ("CitiMortgage routinely and systematically makes incorrect calculations and determinations at improper times during the loan modification process . . . and routinely provides Plaintiff with other false, [p]re-textual reasons for refusing to extend, eligible Plaintiff [*sic*] their offers for permanent modification.").) Calhoun "had a reasonable opportunity to raise all the issues presented here in the state law foreclosure action." *Mumma*, 2013 WL 4761118, at *3.

### D. Count V: Fair Debt Collection Practices Act

Count V alleges that CitiMortgage violated the FDCPA. The FDCPA is intended in part to prevent a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt" or make any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §§ 1692d, 1692e.

For reasons already articulated, the *Rooker-Feldman* doctrine strips the court of jurisdiction over this claim. Calhoun "had a reasonable opportunity to raise [his] claims in the state court proceedings because state and federal courts have concurrent jurisdiction over . . . FDCPA claims." *Byrd*, 407 F. Supp. 2d at 943; *see also Sheikhani*, 526 F. App'x at 706-07. Calhoun alleges in his complaint as the basis for the FDCPA claim that while he was making monthly payments on his mortgage, CitiMortgage threatened to sell 1633 E.91st. (Compl. ¶ 104.) This injury plainly culminated in the judicial sale of the property, which sale the state court approved. The court has no jurisdiction to hear this claim. The complaint is dismissed and this case is terminated.

ENTER:

Date: January 24, 2014

*[signature: Joan N. Lefkow]*

U.S. District Judge Joan H. Lefkow

7